UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRION AR'MOND GOFF                          CIVIL ACTION

VERSUS                                        NO. 17-10547

MIKE TODD ET AL.                              SECTION "F" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Darrion Ar'mond Goff, is currently a prisoner in the Rayburn Correctional Center ("Rayburn") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. He alleges that defendant Lieutenant Colonel Mike Todd damaged, disrespected and deprived him of his religious items in derogation of his right to free exercise of religion; that defendant Warden Robert Tanner did not properly investigate the claim he filed with respect to the handling of his religious items; and that defendants retaliated against him for filing a claim. Plaintiff seeks monetary damages in the total amount of $50,000. Record Doc. No. 1 (Complaint at ¶ V).

Pending before this court is defendants' motion to dismiss for failure to state a claim, which was filed on December 6, 2017. On December 18, 2017, I conducted a telephone conference in this matter for all the purposes contemplated in Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. Record Doc. No. 10. Plaintiff filed a timely response to defendants' motion to dismiss the same day. Record Doc.

No. 14.  Plaintiff has since provided the court with copies of the disciplinary records and incident reports discussed during his <u>Spears</u> hearing.  Record Doc. No. 15.

I.    PLAINTIFF'S CLAIMS AND RECORDS

In plaintiff's complaint he asserted four claims, including: (1) a violation of his First Amendment "Right to Practice Religion Freely"; (2) intimidation and threats by Todd when Todd told him he would have to send his kufi caps home;[1] (3) Tanner did not fully investigate his claims and Tanner's response was unrelated to his allegations; and (4) retaliation for filing an Administrative Remedy Procedure ("ARP").  Record Doc. No. 1 (Complaint at ¶ IV).  During his <u>Spears</u> hearing, plaintiff outlined three claims: (1) violation of his religious rights when his religious items were disrespected; (2) Warden Tanner did not properly investigate his grievance; and (3) he was retaliated against for filing a grievance.

A.    Plaintiff's Testimony

Plaintiff testified that he is incarcerated in Rayburn for an armed robbery and aggravated battery conviction in July 2008, for which he is serving a 30-year sentence. He confirmed that the claims he asserts in this case arise from his incarceration in Rayburn.

Plaintiff testified that on April 17, 2017, Lieutenant Colonel Todd went through

_____

[1] These allegations will be considered as part of plaintiff's retaliation claims for purposes of this report.

his personal items when he was transferred from Allen Correctional Center ("Allen") to Rayburn.   He asserted that there was already a "vibe" against inmates who were transferred from Allen to Rayburn because offenders from Allen had a reputation of "not having respect for authority."  Goff stated that "Colonel Todd took it upon himself to go through my items and determine what I [was] allowed to have and what I [was] not allowed to have."  It was during this search, plaintiff stated, that Todd told him that his kufi caps had to be sent home.  Goff testified that he explained to Todd that the caps are religious items, that the Department of Corrections allows him to have the caps and that it is his constitutional right to practice his religion freely.  Plaintiff stated that Colonel Todd responded, "'well, this is not the Department of Corrections, this is Rayburn.  You have to send them home or I will have them destroyed.  Here at Rayburn Correctional Center, we do things differently.'"  Goff asserted that he told Todd that the Department of Corrections policy allows inmates to retain religious items.  He testified that he has been incarcerated long enough to understand the policies behind transfers and the items inmates are allowed to have.

When questioned about the subject items, plaintiff explained that kufi caps are religious head coverings worn by Muslims.  He confirmed that he is a practicing Muslim. "After we clean ourselves, we throw these hats on to make our prayers.  We put these hats on to either acknowledge ourselves or remind ourselves of what is our obligation of

upholding this faith." Goff stated that the message conveyed by the Muslim faithful who wear kufis is "that we mean no harm, that we are respectful individuals, and we are faithful men of God. Mainly, these hats are used when we are praying so we don't get dirt[y] when we prostrate ourself on the ground."

Plaintiff testified that his kufi caps were sent home; he has not had a kufi cap since his were sent away; and the absence of his kufi caps prevents him from praying properly because he is "not praying correctly in the manner that [he has] been taught and in the manner we Muslims are to pray." Goff stated that he uses "an ordinary skullcap" given to him by another inmate as a substitute for the kufi. Plaintiff explained that a kufi cap has different threading and design than the skullcap he uses, which is thick and causes him to sweat. Goff stated that sweating while wearing his skullcap "invalidates the whole meaning of being clean" while praying. Plaintiff confirmed that he is still able to pray, however. He affirmed that his allegation is that wearing a kufi cap is necessary to proper religious observance and that the skullcap is not a sufficient substitute.

Goff also alleged that his Qu'ran was disrespected and damaged by Todd during Todd's initial search of his personal items upon transfer from Allen. Plaintiff testified that Todd ripped the spine away from the pages of the book and tore out the marker ribbon of his Qur'an while checking it for contraband. When describing the subject incident, Goff admitted, "for a second I almost lost control, and I almost reacted in a manner that I think

I would've regretted because of the situation that was happening and the value of these religious items." Goff stated that his Qur'an was returned to him in damaged condition, but he testified that he still uses the book for religious purposes.

Goff stated that he received a memorandum on April 21, 2017, stating that several of his kufi caps were sent home with money drawn from his account. Plaintiff testified that he filed a grievance concerning the denial of his kufi caps and the damage to his Qur'an on April 22, 2017. Goff explained that Warden Tanner rejected his grievance with the stated reason that a family member picked up his kufi caps during visitation, per Goff's request. He asserted that Warden Tanner did not properly investigate the grievance. Plaintiff claimed that he could not have requested that his kufi caps be picked up by a family member if they were sent home by jail personnel in the mail.

Plaintiff confirmed that his third complaint is that he was retaliated against for filing the grievance on April 22. He stated that he was housed in a cell-block so the jail could "see about my conduct and monitor me for a certain period of time to see if I am able to re-enter into general population." Goff asserted that he was confined to his cell-block for non-disciplinary reasons since his arrival at Rayburn in April 2017. He admitted, however, that he had a history of defiance-related disciplinary problems at Allen, which he confirmed was likely the reason he was still being monitored at Rayburn.

Plaintiff testified that he was involved in two incidents at Rayburn, one on July 26,

2017 and another on November 19, 2017, which led to disciplinary hearings.  Goff

testified that he first experienced retaliation when Colonel Todd entered his cell-block on

July 26.  Plaintiff asserted that he was standing in his cell door and could see Todd walk

through the door, where he was greeted by Sergeant William Jones.  Goff asserted that

this was the first time Jones had worked this cell-block and that he had never spoken with

Jones.  Plaintiff stated that Jones accused him of yelling obscenities down the cell-block.

Goff read Jones' account from a disciplinary record.  He denied saying anything to Jones.

Plaintiff testified that he was charged with defiance and aggravated disobedience based

on this incident and that he had a hearing.  Goff confirmed that he made a statement on

his own behalf before hearing officers and was convicted of the disciplinary offenses after

the hearing.  Plaintiff stated that he was given eight (8) weeks cell confinement, four (4)

weeks loss of telephone privilege and four (4) weeks loss of canteen privilege.

Goff testified that the second incident occurred on November 19, 2017, after a

church service.  He stated that he believes the allegations contained in the disciplinary

write-ups from the incidents on July 26 and November 19 are untrue.  Goff asserted that

the only reason he was convicted of these two offenses is because officer reports are given

more weight than the statements of inmates.  "After 10 years of being incarcerated," he

stated, "I've never received these kinds of write-ups."  Plaintiff testified that he was also

"denied school" and "all sorts of things" due to retaliation.  He testified that he believes

his life is in danger due to the grievance he filed but that he has not been physically harmed.

B.    Plaintiff's Disciplinary Records

Goff's disciplinary records contain reports concerning three separate incidents on July 8, July 26 and November 19, 2017.  On July 8, a disciplinary report was filed against Goff for "violently shaking" his cell door bars.  Record Doc. No. 15 at p. 14.  He pled guilty and was convicted of property destruction.  Id.

Goff's records from the July 26 incident indicate that he was charged with defiance and aggravated disobedience.  Id. at p. 4.  Officer Jones reported that Goff yelled obscenities at him.  Id.  Plaintiff pled not guilty, but he was given a sentence of eight (8) weeks cell confinement, four (4) weeks canteen loss and four (4) weeks telephone privilege loss after a hearing on July 28, 2017.  Id.  The hearing officers checked off "Report is Clear and Precise," "Officer's version is determined to be more credible than inmate's" and "Only defense is denying the contents of report" as the reasons for the hearing disposition and checked "Seriousness of Offense" under the reasons for sentence section.  Id.  Goff filed an ARP grievance on August 2, 2017, in response to the disposition of his July 28 hearing.  Id. at pp. 6-8.  He requested three forms of relief, including "no more...[r]etaliation from Col. Mike Todd and/or officer(s) of Rayburn Correctional Center."  Id.  Goff's relief request form was rejected by the warden on

August 8, 2017, because "[d]isciplinary matters are not appealable through the Administrative Remedy Procedure." Id. at p. 9.

The third disciplinary report in Goff's records, from November 19, 2017, states that he did not return to his cell-block as he was ordered after the "church callout," which was a form of aggravated disobedience. Id. at p. 5. Goff appealed his sentence, a loss of two (2) weeks of yard and recreation time, and his appeal was denied on December 19, 2017. Id. at p. 10. Warden Tanner's appeal decision, id., states:

> On appeal, you have not provided any evidence to dispute the reporting officer's version of the incident. The rule violation report is clear and concise and provides sufficient evidence of the rule violation as charged. Because of the seriousness of the offense and the need to ensure the security and orderly running of the facility, I concur with the judgment of the Disciplinary Board.

## II. DEFENDANTS' MOTION

On December 6, 2017, defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted and asserting qualified immunity. Record Doc. No. 10. No evidence of any kind has been submitted in support of the motion, which is asserted strictly under the Rule 12(b)(6) standard. First, defendants assert that, to the extent plaintiff has asserted any monetary claims against defendants in their official capacities, "[s]tate officials sued in an official capacity for monetary relief are immune from suit in federal court pursuant to the Eleventh Amendment to the U.S. Constitution." Record Doc. No. 10-1 at p. 3. Defendants concede that plaintiff sues defendants in their

individual capacities.  Id.

Second, defendants argue that claims for damages against them in their individual capacities are barred by the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Id. at p. 6.  Defendants cite Fifth Circuit precedent holding that RLUIPA does not create a private right of action against prison officials in their individual capacities.  Id.

Third, defendants state that plaintiff's claims against defendants, in their individual capacities, for compensatory damages are barred by 42 U.S.C. § 1997(e)(e) because plaintiff has not alleged a physical injury.  Id.

Fourth, defendants assert that they are entitled to qualified immunity in their individual capacities.  Id. at pp. 6-7.

Finally, defendants argue that plaintiff has failed to plead sufficient facts to support his claims.  Id. at p.8.  Defendants state that plaintiff has failed to explain which policy was invoked in the decision to send his kufi caps home; how his Qur'an was mishandled, disrespected or damaged; how his right to exercise his religious beliefs was denied by Todd's actions; and which facts suggest that defendants denied him a reasonable opportunity to exercise his religious freedom.  Id. at p. 9.  Defendants cite Fifth Circuit precedent concerning the restriction of kufi cap use in relation to the legitimate penological interest of safety; e.g., weapons could be hidden inside a kufi cap.

Defendants also state that to the extent plaintiff is asserting destruction or deprivation of property without due process, his due process rights were not violated and the matter was sufficiently investigated by Warden Tanner.  Id. at pp. 10-11.

As to plaintiff's retaliation claim, defendants argue that plaintiff has not alleged that either named defendant retaliated against him and, as such, plaintiff's "naked assertion[s]" are insufficient.  Id. at pp. 11-12.  Defendants cite the four elements necessary for plaintiff to assert a retaliation claim under Section 1983, established by the Fifth Circuit in Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999): "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, (4) causation." Greninger, 188 F.3d at 324-25.  Defendants state that plaintiff's conclusory allegations fail to show a retaliatory motive or intent by defendants in response to plaintiff filing an ARP.  Id. at p. 12.

Plaintiff's only complaint against defendants Todd and Tanner, defendants argue, involves the handling of his Qu'ran and the decision made during his ARP.  Id. at p. 13. "[I]t is important to note," defendants assert, "that Plaintiff does not identify a discriminatory policy that was the driving force behind any of the alleged acts that now form the basis of this suit.  The Court should recognize that Plaintiff fails to allege that Defendants violated clearly established law."  Id.

- 10 -

III.    <u>ANALYSIS</u>

A.    <u>Standards of Review</u>

The current procedural posture of this case requires the court to apply two different but closely related legal standards to evaluate plaintiff's claims.  First, Fed. R. Civ. P. 12(b)(6) standards apply to defendants' motion to dismiss.  Second, the court applies the well-established screening standards emanating from 28 U.S.C. § 1915 to determine if Goff's claims are legally frivolous or state a cognizable Section 1983 claim.

(i)    <u>Motion to Dismiss</u>

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted.  The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than mere possibility of misconduct."

<u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 796 (5th Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007))).

"The Supreme Court's decisions in <u>Iqbal</u> and <u>Twombly</u> . . . did not alter the long-

standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a court must 'accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff.'"  Id. at 803 n.44 (quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)) (internal quotation omitted).

The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.  Walch v. Adjutant Gen.'s Dep't, 533 F.3d 289, 293 (5th Cir. 2008).  Defendants' motion addresses only the sufficiency of the allegations of the complaint as a matter of law, not whether the allegations are true.  Thus, for the purposes of the motion, the court accepts "'all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs.'"  Jabary v. City of Allen, No. 12-41054, 2013 WL 6153241, at *3 (5th Cir. Nov. 25, 2013) (quoting Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)).  "With respect to any well-pleaded allegations 'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 664).

(ii)    Screening Standards

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless of whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir.

- 12 -

2006); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998); <u>Lewis v. Sec'y, DOC</u>, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), <u>aff'd</u>, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); <u>Lewis</u>, 589 F. App'x at 952; <u>Thompson</u>, 213 F. App'x at 942; <u>Shakur</u>, 391 F.3d at 113; <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C.§ 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusory allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.

B.    Religious Freedom

Goff testified during the Spears hearing that his kufi caps were sent home but that he uses a borrowed skullcap when he prays. He asserted, however, that his kufi cap is necessary for proper religious observance and that the skullcap is not a sufficient substitute. The issue with this claim, in terms of analysis and possible dismissal, is that neither plaintiff nor defendants have cited the prison regulation or prison penological policy or objective defendants invoked when denying Goff his kufi caps.

"The Constitution requires that 'reasonable opportunities must be afforded to all prisoners to exercise . . . religious freedom.'" Green v. McKaskle, 788 F.2d 1116, 1126 (5th Cir. 1986) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)). While inmates

clearly retain some protections afforded by the First Amendment, the rights of all prisoners are restricted. "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a reaction justified by the considerations underlying our penal system.'" O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)). The propriety of limiting prisoners' First Amendment rights "arise[s] both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. (emphasis added).

Evaluation of these valid penological objectives is committed to the judgment of prison administrators, and courts must afford deference to their evaluation. Id. at 349. Thus, when the action of prison officials impinges on prisoners' constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Id.

As to plaintiff's First Amendment rights generally,

[p]rison regulations that impinge on fundamental constitutional rights are reviewed under the deferential standard set forth in Turner v. Safley, 482 U.S. 78 . . . (1987). Under Turner, "a prison regulation that impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." Turner employs a four-factor test to resolve this inquiry: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation. A court "must determine whether the government objective underlying the regulation at issue is legitimate and

neutral, and that the regulations are rationally related to that objective."

Freeman v. Tex. Dep't of Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004) (quoting

Thornburgh v. Abbott, 490 U.S. 401, 414-15 (1989); Turner, 482 U.S. at 89, 91) (citing

O'Lone, 482 U.S. at 349-50); see also Scott v. Miss. Dep't of Corr., 961 F.2d 77, 81 (5th

Cir. 1992) (a court need not "weigh evenly, or even consider, each of these factors," as

rationality is the controlling standard).  The "pertinent question is not whether [plaintiff

has] been denied specific religious accommodations, but whether, more broadly, the

prison affords [him] opportunities to exercise [his] faith," Freeman, 369 F.3d at 861. In

this case, Goff has not sufficiently alleged an action by prison officials that impinged on

his constitutional right because he continues to practice his religion and does so with a

head covering.  See Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004) ("The critical

question for Turner purposes is whether the prison officials' actions deny prisoners their

free-exercise rights without leaving open sufficient alternative avenues for religious

exercise."); O'Lone, 482 U.S. at 346-49 (Supreme Court upheld policy that prohibited

Muslim prisoners from attending Friday afternoon services, given the availability of other

Muslim practices).

I find that Goff's complaint, broadly construed and expanded upon by his Spears

testimony, states viable First Amendment religious rights and RLUIPA claims.  RLUIPA

states in pertinent part that, "[n]o government shall impose a substantial burden on the

religious exercise of a person residing in or confined to an institution."   42 U.S.C. §

2000cc et seq.

> The standard under RLUIPA "poses a far greater challenge than does <u>Turner</u>
> to prison regulations that impinge on inmates' free exercise of religion."
> Plaintiff must demonstrate that the government practice complained of
> imposes a "substantial burden" on his religious exercise.  The government
> then has the burden of persuasion that the application of its substantially
> burdensome practice is in furtherance of a compelling governmental interest
> and is the least restrictive means of furthering that interest.

<u>Phillips v. Cobb</u>, No. 3:14CV3109,at *7 (W.D. La. Apr. 4, 2016) (quoting <u>Freeman</u>, 369

F.3d at 858 n.1.; <u>Adkins v. Kaspar</u>, 393 F.3d 559, 567 (5th Cir. 2004)) (citing 42 U.S.C.

§ 2000cc-s; 146 Cong. Rec. S7776 (July 27, 2000).  Goff sufficiently alleges that his right

to free exercise was violated when he was deprived of his kufi caps and that this lack of

kufi caps is a substantial burden on his religious exercise because he is prevented from

praying in the proper manner.

In <u>Phillips</u>, the United States District Court for the Western District of Louisiana

found that "[p]laintiff's claim concerning his ability to wear a Kufi outside of his dorm

is a substantial burden under RLUIPA. . . . it is undisputed that the wearing of a Kufi as

desired by [plaintiff] is a religious exercise."   <u>Id.</u> at *8 (citing <u>Ali v. Stephens</u>, 69

F.Supp.3d 633, 643-44 (E.D. Tex. 2014) (substantial burden imposed by rule prohibiting

prisoners from wearing religious headgear throughout prison).  The prison's warden

<u>testified</u> that inmates were not allowed to wear head coverings of any kind outside of the

dorms because head coverings could be used to hide contraband and/or to signify gang affiliation (by color). Id. at *6.

On motion for summary judgment, supported by evidence, the Western District ultimately found no RLUIPA violation in Phillips because the defendant had a compelling interest in the safety and security of its prisoners and prison staff, and restricting kufi use outside of inmates' dorms was the least restrictive way of furthering the prison's compelling interest. Id. at *8. In addition, the court held that plaintiff's First Amendment right of free exercise of religion was not violated because plaintiff was provided an avenue to exercise his religious beliefs, and he failed to show the prison's policies were unreasonable. Id. at *6.

A survey of Fifth Circuit decisions addressing prison regulations involving head coverings reveals a variety of penological interests advanced by prisons that do not allow inmates to wear kufi caps, either by restricting kufi use completely or only allowing inmates to wear kufis in their dorms/cells. In Muhammad v. Lynaugh, 966 F.2d 901 (5th Cir. 1992), the Fifth Circuit upheld the district court's finding that the evidence established that the prison's regulations restricting inmates from wearing kufis outside of their dorms and religious services bore a reasonable relationship to the legitimate penological interest of prison security. Garner v. Morales, No. 07-41015, 2009 WL 577755 (5th Cir. Mar. 6, 2009), cited Muhammad in holding that the Texas Department

of Criminal Justice's ("TDCJ") policy of restricting beard length and kufi use bore a reasonable relationship to the legitimate penological interest of prison security.

On the other hand, in Garner v. Kennedy, 713 F.3d 237 (5th Cir. 2013), the Fifth Circuit affirmed the district court's finding that TDCJ's no-beard policy was not the least restrictive means of advancing the compelling government interests in controlling costs and security under RLUIPA. The Fifth Circuit's opinion in Ali v. Stephens, 822 F.3d 776 (5th Cir. 2016), was similar to its opinion in Garner because it found that the prison's policy of prohibiting first-length beards and kufi caps was not the least restrictive means of serving the prison's interests in efficient identification, cost control and preventing the transfer of contraband.

In this case, plaintiff alleges sufficient facts to state a claim for relief for violation of his religious free exercise rights under the First Amendment and the RLUIPA. As the aforementioned Fifth Circuit precedent demonstrates, prison regulations restricting kufi use do not per se bear a reasonable relationship to a legitimate penological interest. Instead, defendants must submit evidence establishing what legitimate penological interest is advanced by the restriction, so that the court may evaluate the reasonableness of the policy and balance it against whatever burden it might place on plaintiff's religious rights. As the case law outlined above demonstrates, such evidence may be appropriately reviewed via summary judgment practice. I therefore recommend that defendants' current

motion be denied as to plaintiff's religious rights claims so that defendants and plaintiff can provide the court with evidence about the subject policy and its effect on plaintiff's rights in connection with summary judgment practice.

C.    Failure to Investigate

As to plaintiff's failure to investigate claim, which is an issue of due process, "a prisoner's treatment presents a vindicable liberty interest only if it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Smith v. Horton, 670 F. App'x 872, 873 (5th Cir. 2016) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "To the extent [plaintiff] asserts that the defendants failed to adequately investigate his ensuing administrative grievance, he had no protected liberty interest in either the adequacy or the result of prison administrative grievance procedures." Id. at 873 (citing Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005)). "Simply put, an inmate does not have a constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction." Claborn v. Tanner, No. 12-0319, 2013 WL 6072710, at *9 (E.D. La. Nov. 18, 2013) (citing Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger, 404 F.3d at 373-74; Davis v. St. Charles Par. Corr. Ctr., Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009)) (other citations omitted).

The plaintiff in Geiger alleged that prison officials failed properly to investigate his grievances and letters concerning the conduct of the jail's mail room and security staff. Geiger, 404 F.3d at 373.  The Fifth Circuit found that the district court did not err in dismissing Geiger's claim as legally frivolous because he did not have "a federally protected interest in having these grievances resolved to his satisfaction.  As he relie[d] on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances [wa]s indisputably meritless."  Id. at 374. "Upon close review, Geiger stands for the proposition that, if the plaintiff does not have a cognizable constitutional claim, the plaintiff cannot turn his grievance into a constitutional due process claim based upon a prison official's denial of the grievance. The grievance process, by itself, does not implicate constitutional due process rights." Mejia v. Ramirez, No. 2:14-CV-238, 2016 WL 3661902, at *1 (S.D. Tex. July 11, 2016), report & recommendation adopted.

In the instant case, Goff filed an ARP grievance, which was reviewed by the warden.  Record Doc. No. 15 at p. 11.  Goff alleged that on April 17, 2017, while being processed as a new intake, Colonel Mike Todd handled his Qur'an in a disrespectful manner.  Id.  The appeal form also states that Goff complained of being forced to send home three (3) kufi caps.  Id.  The form indicates that Todd denied mishandling or damaging Goff's Qur'an, stated that he "simply searched the book for contraband as

required" and advised Goff that any items over the limit of what he was allowed in his custody assignment at Rayburn would have to be sent home.  Id.  According to the form, plaintiff was sent a "Notice of Rejection" for prohibited items on April 18, 2017, and on May 7, 2017 those items "were picked up by Lynette Hogans after a visit per [Goff's] request."  Id.  Tanner denied Goff's request for remedy because there was "no evidence to substantiate any misconduct on the part of Colonel Todd."  Id.  An "Offender Funds Withdrawal Request" form and interoffice memorandum indicate that seven (7) kufi caps, one pair of workout gloves and one pair of shoes were mailed by Goff to his grandmother, Marva Goff, on April 21, 2017.  Id. at pp. 12-13.

Goff has no protected liberty interest in either the adequacy or the result of Rayburn's administrative grievance procedures, and denial of his grievance does not implicate constitutional due process rights.  Accordingly, his failure to investigate claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.  It must be dismissed pursuant to 28 U.S.C. § 1915(e).

D.    Retaliation

Goff asserts that he was subjected to retaliation for filing a grievance alleging that his kufi caps were unnecessarily banned and that his Qur'an was damaged.  It is correct that prison officials may not retaliate against a prisoner for exercising his First Amendment right to complain through proper channels about alleged misconduct.  Walker

v. Savers, 658 F. App'x 720, 727 (5th Cir. 2016) (citing Morris v. Powell, 449 F.3d 682,

684 (5th Cir. 2006)); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, the

law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial

evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific
> constitutional right, the defendants' intent to retaliate against the plaintiff for
> his or her exercise of that right, a retaliatory adverse act, and causation, i.e.,
> but for the retaliatory motive the complained of incident . . . would not have
> occurred.  With respect to the last element, we [have] emphasized that an
> action motivated by retaliation for the exercise of a constitutionally
> protected right is actionable even if the act, when taken for a different
> reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in

relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977);

Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66)

(quotations and additional citations omitted); accord Walker, 658 F. App'x at 727; Hanna

v. Maxwell, 415 F. App'x 533, 535 (5th Cir. 2011).

In Woods, the Fifth Circuit, applying the general First Amendment principles

addressed above, affirmed the district court's denial of defendants' motion for summary

judgment.  Defendants in that case had sought dismissal of a prisoner's claim based on

allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's

letters of complaint to a federal judge and to the warden of the prison.  The Fifth Circuit

agreed that the inmate's retaliation claims should be permitted to proceed, but in doing

so it expressed the following caution: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted). The Fifth Circuit warned that "trial courts must carefully scrutinize these claims." Id.

> To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complaint of incident. . . would not have occurred. This places a significant burden on the inmate . . . . The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added); accord Walker, 658 F. App'x at 727.

A year after Woods was decided, the Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in Lewis v. Casey, 518 U.S. 343 (1996). The Supreme Court made clear in Lewis that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. Id. at 349-50.

A few years ago in Morris, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of de minimis retaliatory acts can support a retaliation claim" under the First Amendment. Morris, 449 F.3d at 684. The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights were de minimis, but whether any violation occurred

at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

Id.  The Fifth Circuit held that

[t]he purpose of allowing inmate retaliation claims under 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so de minimis that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a 1983 claim.
. . . . Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .
With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in Morris accord with the Supreme Court's holding in Lewis that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim.  Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

Thus, the law in the Fifth Circuit

is well established that prison officials may not retaliate against an inmate who exercises his right of access to court.  Officials likewise may not retaliate against an inmate for using the grievance system.  A plaintiff must allege facts showing that the defendant possessed a retaliatory motive.  The

- 26 -

inmate must show <u>more than his personal belief that he was the victim of retaliation.  Mere conclusory allegations of retaliation are not enough.</u>  In order to proceed on his claims, a plaintiff must show that the retaliatory adverse act [was] more than a de minimis act.

<u>Decker v. McDonald</u>. No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010),

<u>report & recommendation adopted</u>, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010)

(citing <u>Morris</u>, 449 F.3d at 687; <u>Jones v. Greninger</u>, 188 F.3d 322, 324-25 (5th Cir. 1999);

<u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997); <u>Moody v. Baker</u>, 857 F.2d 256,

258 (5th Cir. 1988); <u>Whittington v. Lynaugh</u>, 842 F.2d 818, 820 (5th Cir. 1988))

(additional citations omitted) (emphasis added); <u>accord</u> <u>Walker</u>, 658 F. App'x at 727.

Accepting as true plaintiff's testimony and written allegations, he has not

established that a violation of his federal constitutional right to be free from retaliation

has occurred under the circumstances described in his complaint.  As an initial matter,

Goff cannot show either a retaliatory motive for his disciplinary hearing outcomes or that,

but for a retaliatory motive, the disciplinary action against him would not have occurred.

The Fifth Circuit has stated that the existence of a "[legitimate] prison disciplinary report

is highly probative, if not dispositive, of whether a defendant acts with a retaliatory

animus." <u>Rankin v. Pearson</u>, No. 5:11CV138-DCB-RHW, 2013 WL 1305517, at *6 (S.D.

Miss. Mar. 26, 2013), <u>aff'd</u>, 612 F. App'x 204 (5th Cir. 2015) (citing <u>Woods</u>, 60 F.3d at

1166); <u>accord</u> <u>Reese v. Skinner</u>, 322 F. App'x 381, 383-84 (5th Cir. 2009).

In this case, Goff admitted and his disciplinary records confirm that he was

convicted of three disciplinary violations at Rayburn. Record Doc. No. 15 at pp. 4, 5 and 14. The record of Goff's conviction of disciplinary violations at Rayburn does not demonstrate "but for" causation; instead, it demonstrates that defendants had a reasonable, non-retaliatory motivation for charging Davis with violations. Walker, 658 F. App'x at 727 (quotation omitted) (citing McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)). Thus, his allegations do not give rise to any plausible inference of retaliatory motive on the part of the defendants and therefore do not "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quotation omitted).

The Fifth Circuit has upheld dismissals of retaliation claims based on allegedly false disciplinary charges when the inmate either admitted or was found guilty of having committed the disciplinary infraction. Guy v. Leblanc, No. 13-2729 c/w 13-5033, 2015 WL 4755078, at *12 (E.D. La. Aug. 10, 201) (citing Sylvester v. Cain, 311 F. App'x 733, 2009 WL 423968, at *2 (5th Cir. 2009)) (other citations omitted); Cross v. Dretke, 241 F. App'x 203, 2007 WL 2110728, at *1 (5th Cir. 2007). In the instant case, Goff was found guilty of having committed three disciplinary infractions and, as such, he cannot show either a retaliatory motive for the disciplinary action or that, but for a retaliatory motive, the disciplinary action would not have occurred.

Thus, Goff's retaliation claim alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts. Accordingly, his retaliation claim is legally

frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed pursuant to 28 U.S.C. § 1915(e).

IV.    RECOMMENDATION

For the following reasons, I recommend that defendants' motion be GRANTED IN PART and DENIED IN PART as follows:

(1)    Defendants' motion should be GRANTED IN PART in that plaintiff's failure to investigate and retaliation claims should be DISMISSED WITH PREJUDICE.

(2)    Defendants' motion should be DENIED IN PART as to plaintiff's constitutional and statutory free exercise of religion claims, and defendants should be ordered to file a motion for summary judgment, supported by evidence, with plaintiff provided an opportunity to dispute it.  Neither plaintiff nor defendants have provided necessary evidence concerning the prison policy invoked in depriving Goff of his kufi caps, the prison's legitimate penological interest in preventing inmates from wearing kufi caps, and the extent of the policy's impact on plaintiff's exercise of his religious rights.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. §

636(b)(1)).[2]

New Orleans, Louisiana, this ____27th____ day of ____February____, 2018.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.