UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARRION AR'MOND GOFF | CIVIL ACTION |
| VERSUS | NO. 17-10547 |
| MIKE TODD ET AL. | SECTION "F" (2) |

### REPORT AND RECOMMENDATION

Plaintiff, Darrion Ar'mond Goff, is a prisoner currently incarcerated in the Rayburn Correctional Center ("Rayburn") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. His sole remaining claim is that defendant Lieutenant Colonel Mike Todd damaged, disrespected and deprived him of his religious items in derogation of his right to free exercise of religion. Plaintiff seeks monetary damages in the total amount of $50,000. Record Doc. No. 1 (Complaint at ¶ V).

The district judge previously adopted my report and recommendation, granting in part and denying in part defendants' motion to dismiss. Record Doc. Nos. 10, 16 and 17. In accordance with his order, I issued a scheduling order directing defendants to file a motion for summary judgment identifying and providing evidence, by affidavit or otherwise, of the prison policy that was invoked when Goff was deprived of his kufi caps, the extent to which the policy impacted plaintiff's exercise of his religious rights, and supporting their assertions that the prison has a legitimate penological interest in preventing inmates from wearing kufi caps. Record Doc. No. 18.

Defendants filed a timely motion for summary judgment. Record Doc. No. 19. Although provided with an opportunity to do so, plaintiff failed to file a written response to defendants' motion. However, plaintiff's previous written submission and his sworn testimony provided during the hearing conducted on December 18, 2017, pursuant to <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), Record Doc. No. 13, has been considered in opposition to defendants' motion.

## FACTUAL BACKGROUND AND MOTION

### I. PLAINTIFF'S TESTIMONY

During the <u>Spears</u> hearing, plaintiff testified that he is incarcerated in Rayburn for an armed robbery and aggravated battery conviction in July 2008, for which he is serving a 30-year sentence. He confirmed that the religious rights claim he asserts in this case arises from his incarceration in Rayburn.

Plaintiff testified that on April 17, 2017, Lieutenant Colonel Todd went through his personal items when he was transferred from Allen Correctional Center ("Allen") to Rayburn. He asserted that there was already a "vibe" against inmates who were transferred from Allen to Rayburn because offenders from Allen had a reputation of "not having respect for authority." Goff stated that "Colonel Todd took it upon himself to go through my items and determine what I [was] allowed to have and what I [was] not allowed to have." It was during this search, plaintiff stated, that Todd told him that his kufi caps had to be sent home. Goff testified that he explained to Todd that the caps are religious items, that the Department

of Corrections allows him to have the caps and that it is his constitutional right to practice his religion freely.  Plaintiff stated that Colonel Todd responded, "'well, this is not the Department of Corrections, this is Rayburn.  You have to send them home or I will have them destroyed.  Here at Rayburn Correctional Center, we do things differently.'"  Goff asserted that he told Todd that the Department of Corrections policy allows inmates to retain religious items.  He testified that he has been incarcerated long enough to understand the policies behind transfers and the items inmates are allowed to have.

When questioned about the subject items, plaintiff explained that kufi caps are religious head coverings worn by Muslims.  He confirmed that he is a practicing Muslim.  "After we clean ourselves, we throw these hats on to make our prayers.  We put these hats on to either acknowledge ourselves or remind ourselves of what is our obligation of upholding this faith."  Goff stated that the message conveyed by the Muslim faithful who wear kufis is "that we mean no harm, that we are respectful individuals, and we are faithful men of God.  Mainly, these hats are used when we are praying so we don't get dirt[y] when we prostrate yourself on the ground."

Plaintiff testified that his kufi caps were sent home; he has not had a kufi cap since his were sent away; and the absence of his kufi caps prevents him from praying properly because he is "not praying correctly in the manner that [he has] been taught and in the manner we Muslims are to pray."  Goff stated that he uses "an ordinary skullcap" given to him by another inmate as a substitute for the kufi.  Plaintiff explained that a kufi cap has

different threading and design than the skullcap he uses, which is thick and causes him to sweat. Goff stated that sweating while wearing his skullcap "invalidates the whole meaning of being clean" while praying. Plaintiff confirmed that he is still able to pray. He affirmed that his allegation is that wearing a kufi cap is necessary to proper religious observance and that the skullcap is not a sufficient substitute.

## II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants argue that plaintiff's claim against them must be dismissed because the evidence shows that they did not violate Goff's First Amendment rights while he was incarcerated in Rayburn. Defendants assert that plaintiff was allowed to keep three out of ten kufi caps when he was transferred to Rayburn; defendants acted pursuant to general prison policies in sending home seven of Goff's kufi caps; the general prison policies were of neutral intent and impact and had no effect on plaintiff's ability to exercise his religious beliefs; and Rayburn's policies protect the valid penological interests of storage and security. Record Doc. No. 19 at pp. 1-2.

In support of their motion, defendants included Goff's initial property inventory form, which lists the type and number of Goff's personal possessions when he was transferred to Rayburn on April 17, 2017. Record Doc. No. 19-4. Although this document is itself not independently verified, the Fifth Circuit has recognized that such materials may nonetheless by considered on summary judgment because "[a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." Maurer v. Indep.

Town, 870 F.3d 380, 384 (5th Cir. 2017) (citing Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017); LSR Consulting, LLC v. Wells Fargo Bank, N.A., 835 F.3d 530, 534 (5th Cir. 2016)).  The first page of the inventory form simply notes the items in Goff's possession, including "Religion Hat–10."  Id. at p. 1.  On the third page, which lists the personal items that would be sent home, "Religion Cap–7" is crossed out.  Id. at p. 3.  Defendants assert that while plaintiff seems to have crossed out "Religion Cap–7" before signing the document, he was allowed to keep three of his ten kufi caps.  Record Doc. No. 19-1 at p. 2.  Defendants also argue that Goff was allowed to wear his three kufi caps and was afforded a reasonable opportunity to exercise religious freedom.  Id. at p. 3.

In the affidavit attached to defendants' motion, Todd states that the Department of Public Safety and Corrections' Posted Policy #028 permits inmates to own two caps, and Goff was allowed to keep three of his kufi caps despite the posted policy.  Record Doc. No. 19-6 at ¶¶ 3-4.  Posted Policy #028 permits inmates to own two caps, but they can only be white or gray and must be a baseball type, knit type or skull cap.  Record Doc. No. 19-7 at p. 3.  Posted Policy #028's effective date is July 24, 2017, id. at p. 1, and Goff was transferred to Rayburn on April 17, 2017.  While the policy provided by defendants did not take effect until July 2017, the inventory form of Goff's personal property indicates that inmates were only allowed to keep two caps in April 2017.  Record Doc. No. 19-4 at p.1.

The affidavit describes two legitimate penological interests in maintaining Posted Policy #028.  First, inmates have only two lockers for personal property, and limiting

duplicative items is an effective way to efficiently use the prison's limited storage space. Record Doc. No. 19-6 at p. 2, ¶ 6. Second, inmates use duplicative items for "bartering, which is not allowed." Id. at ¶ 7. "If offenders can purchase or trade items from other offenders, it makes canteen limitations irrelevant as a deterrent for improper conduct." Id. at ¶ 8 (emphasis added). Based on their evidence, defendants argue that bartering often leads to "animosity and, ultimately, violence among inmates due to the abnormal market forces of radically uneven supply and demand and illicit rates. Such bartering also severely undercut's [Rayburn's] ability to maintain order." Record Doc. No. 19-1 at p. 4.

## **ANALYSIS**

### I. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>   (B) showing that the materials cited do not establish the absence

>or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
>(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
>(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original).

"A nonmovant's failure to respond to a motion for summary judgment does not permit entry of a 'default' summary judgment. The district court, however, may accept movant's evidence as undisputed and relegate the nonmovant to his unsworn pleadings. Further, pro se briefs are afforded a liberal construction." Carter v. Tangipahoa Par., No. 12–1919, 2013 WL 3364386, at *2 (E.D. La. July 3, 2013) (citations omitted). A pro se litigant is not afforded "particularized additional notice of the potential consequences of a summary judgment motion and the right to submit opposing affidavits," Steward v. Bryan, No. 02–61059, 2003 WL 22295510, at *1 (5th Cir. Oct. 7, 2003), and when a "plaintiff has no opposition to [a] defendant's motion, timely or otherwise, th[e] Court may properly assume that he has no opposition to it." Lucas v. Crowe, No. 11–2752, 2013 WL 870514, at *1 n.1 (E.D. La. Feb. 15, 2013) (citing Local Rule 7.5; Bean v. Barnhart, 473 F. Supp. 2d 739, 741 (E.D. Tex. 2007)).

## II.     RELIGIOUS FREEDOM

Plaintiff contends that he was deprived of his religious kufi caps in derogation of his right to free exercise of religion, and, as such, he cannot properly observe Islam. Goff testified during the Spears hearing that all of his kufi caps were sent home but that he uses a borrowed skullcap when he prays. He asserted that his kufi cap is necessary for proper religious observance, and that the borrowed skullcap is not a sufficient substitute. However, plaintiff confirmed that he is still able to pray.

Defendants dispute plaintiff's testimony that he was not allowed to keep any kufi caps and assert that plaintiff was permitted to keep three, one cap over the general limit for all caps. While there is a fact dispute as to how many of plaintiff's kufi caps were sent home, that fact dispute is <u>not</u> material to the disposition of this motion because it is undisputed that defendants' restriction on possession of hats serves a legitimate penological interest, that defendants' regulation is reasonably related to that legitimate interest and that plaintiff retained the ability freely to exercise his religion by praying with a head covering.

"The Constitution requires that 'reasonable opportunities must be afforded to all prisoners to exercise . . . religious freedom.'" <u>Green v. McKaskle</u>, 788 F.2d 1116, 1126 (5th Cir. 1986) (quoting <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n.2 (1972)). While inmates clearly retain some protections afforded by the First Amendment, the rights of all prisoners are restricted. "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a reaction justified by the considerations underlying our penal system.'" <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) (quoting <u>Price v. Johnson</u>, 334 U.S. 266, 285 (1948)). The propriety of limiting prisoners' First Amendment rights "arise[s] both from the fact of incarceration <u>and from valid penological objectives</u>–including deterrence of crime, rehabilitation of prisoners, and institutional security." <u>Id.</u> (emphasis added).

Evaluation of these valid penological objectives is committed to the judgment of prison administrators, and courts must afford deference to their evaluation. <u>Id.</u> at 349. Thus,

when the action of prison officials impinges on prisoners' constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Id.

As to plaintiff's First Amendment rights generally,

> [p]rison regulations that impinge on fundamental constitutional rights are reviewed under the deferential standard set forth in Turner v. Safley, 482 U.S. 78 . . . (1987). Under Turner, "a prison regulation that impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." Turner employs a four-factor test to resolve this inquiry: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation. A court "must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective."

Freeman v. Tex. Dep't of Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004) (quoting Thornburgh v. Abbott, 490 U.S. 401, 414-15 (1989); Turner, 482 U.S. at 89, 91 (citing O'Lone, 482 U.S. at 349-50); see also Scott v. Miss. Dep't of Corr., 961 F.2d 77, 81 (5th Cir. 1992) (a court need not "weigh evenly, or even consider, each of these factors," as rationality is the controlling standard). The "pertinent question is not whether [plaintiff has] been denied specific religious accommodations, but whether, more broadly, the prison affords [him] opportunities to exercise [his] faith," Freeman, 369 F.3d at 861.

In this case, Goff has not offered evidence sufficient to create a triable issue of fact that actions by prison officials impinged on his constitutional right because he has continued to practice his religion and does so with a head covering. See Goff v. Graves, 362 F.3d 543,

549 (8th Cir. 2004) ("The critical question for <u>Turner</u> purposes is whether the prison officials' actions <u>deny</u> prisoners their free-exercise rights <u>without leaving open sufficient alternative avenues</u> for religious exercise.") (emphasis added); <u>O'Lone</u>, 482 U.S. at 346-49 (Supreme Court upheld policy that prohibited Muslim prisoners from attending Friday afternoon services, given the availability of other Muslim practices).

As stated in my previous report and recommendation, Record Doc. No. 16, Goff's complaint, broadly construed and expanded upon by his <u>Spears</u> testimony, states First Amendment religious rights and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims. RLUIPA states in pertinent part that, "[n]o government shall impose a <u>substantial</u> burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc <u>et seq.</u> (emphasis added).

> The standard under RLUIPA "poses a far greater challenge than does <u>Turner</u> to prison regulations that impinge on inmates' free exercise of religion." Plaintiff must demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise. The government then has the burden of persuasion that the application of its substantially burdensome practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

<u>Phillips v. Cobb</u>, No. 3:14CV3109, 2016 WL 2726630, at *7 (W.D. La. Apr. 4, 2016) (quoting <u>Freeman</u>, 369 F.3d at 858 n.1.; <u>Adkins v. Kaspar</u>, 393 F.3d 559, 567 (5th Cir. 2004)) (citing 42 U.S.C. § 2000cc-s; 146 Cong. Rec. S7776 (July 27, 2000).

In <u>Phillips</u>, the United States District Court for the Western District of Louisiana found that "[p]laintiff's claim concerning his ability to wear a Kufi outside of his dorm is a

substantial burden under RLUIPA. . . . [and] it is undisputed that the wearing of a Kufi as desired by [plaintiff] is a religious exercise." Id. at *8 (citing Ali v. Stephens, 69 F.Supp.3d 633, 643-44 (E.D. Tex. 2014) (substantial burden imposed by rule prohibiting prisoners from wearing religious headgear throughout prison). The prison's warden testified that inmates were not allowed to wear head coverings of any kind outside of the dorms because head coverings could be used to hide contraband and/or to signify gang affiliation (by color). Id. at *6.

On motion for summary judgment, supported by evidence, the Western District court ultimately found no RLUIPA violation in Phillips because the defendant had a compelling interest in the safety and security of its prisoners and prison staff, and restricting kufi use outside of inmates' dorms was the least restrictive way of furthering the prison's compelling interest. Id. at *8. In addition, the court held that plaintiff's First Amendment right of free exercise of religion was not violated because plaintiff was provided an avenue to exercise his religious beliefs, and he failed to show the prison's policies were unreasonable. Id. at *6.

A survey of Fifth Circuit decisions addressing prison regulations involving head coverings reveals a variety of penological interests advanced by prisons that do not allow inmates to wear kufi caps, either by restricting kufi use completely or only allowing inmates to wear kufis in their dorms/cells. In Muhammad v. Lynaugh, 966 F.2d 901 (5th Cir. 1992), the Fifth Circuit upheld the district court's finding that the evidence established that the prison's regulations restricting inmates from wearing kufis outside of their dorms and

religious services bore a reasonable relationship to the legitimate penological interest of prison security. Garner v. Morales, No. 07-41015, 2009 WL 577755 (5th Cir. Mar. 6, 2009), cited Muhammad in holding that the Texas Department of Criminal Justice's ("TDCJ") policy of restricting beard length and kufi use bore a reasonable relationship to the legitimate penological interest of prison security.

On the other hand, in Garner v. Kennedy, 713 F.3d 237 (5th Cir. 2013), the Fifth Circuit affirmed the district court's finding that TDCJ's no-beard policy was not the least restrictive means of advancing the compelling government interests in controlling costs and security under RLUIPA. The Fifth Circuit's opinion in Ali v. Stephens, 822 F.3d 776 (5th Cir. 2016), was similar to its opinion in Garner because it found that the prison's policy of prohibiting fist-length beards and kufi caps was not the least restrictive means of serving the prison's interests in efficient identification, cost control and preventing the transfer of contraband.

The Fifth Circuit has also found that prison storage policies restricting inmates' personal property storage space were reasonably related to legitimate penological interests. In Carrio v. Tex. Dep't of Crim. Justice, Inst. Div., 196 F. App'x 266, 268 (5th Cir. 2006), the Fifth Circuit found that plaintiff's First Amendment right to free exercise of religion claim was properly dismissed because prison officials' enforcement of the prison's storage policy was reasonably related to a legitimate penological interest. The court also found that plaintiff's RLUIPA claim lacked merit because plaintiff failed to establish that the prison

storage policy substantially burdened his religious exercise. See Simpson v. Director, TDCJ-CID, No. 4:15cv644, 2017 WL 1022783, at *2-3 (5th Cir. Mar. 16, 2017) ("The Fifth Circuit holds that proper storage of personal property–religious or not–directly and reasonably relates to the legitimate penological goal of maintaining prison security. . . . Plaintiff cannot prevail on [his free exercise of religion] claim since restrictions on an inmate's storage space for legal and religious property are reasonably related to legitimate penological interests."); Johnson v. Tex. Bd. of Crim. Justice, No. 07-20396, at *1 (5th Cir. Dec. 2, 2008) (prison's policy restricting storage space for legal and religious property was reasonably related to legitimate penological interests, and plaintiff's RLUIPA claim was also meritless because he did not demonstrate that the storage policy substantially burdened his religious exercise). In addition to storage limitation concerns, the Fifth Circuit has recognized that security and controlling the flow of contraband are legitimate penological interests. Johnson v. Rupert, 647 F. App'x 407, 407 (5th Cir. 2016); Ramon v. Tex. Dep't of Crim. Justice, 408 F. App'x 852, 853 (5th Cir. 2011).

In the instant case, defendants have submitted evidence establishing that legitimate penological interests concerning storage limitations and dissuading prohibited inter-inmate bartering are advanced by the restrictions on caps and personal property generally that inmates are permitted to possess in jail. Rayburn's policy is reasonable in light of the prison's limited inmate storage space – two lockers per inmate – and the prison's objective

of eliminating illicit inmate bartering to preserve loss of canteen privileges as a deterrent to improper, security-threatening conduct in the jail.

Even if Goff could establish that prison officials imposed a substantial burden on his religion by taking all of his kufi caps, which he believes he needs to pray properly, his own testimony establishes that he was still allowed to observe his religion and practice it through prayer and that he had at least one head covering to use during prayer. Defendants' policy restricting inmates' possession of caps applies to all prisoners, and the restriction is not affected by the religious or secular nature of the cap. There is no evidence in either plaintiff's testimony or pleadings or defendants' submissions that plaintiff was restricted to wearing a cap only in his dorm/cell or during prayer or religious services. Plaintiff has neither identified nor suggested any effective alternative policy that defendants could have implemented.

Given Rayburn's compelling penological interest in keeping inmates from bartering and in the most efficient use of inmates' limited storage space, defendants' decision to send home plaintiff's kufi caps is reasonably related to those legitimate penological interests and appears to be the least restrictive alternative to provide Goff with a means to exercise his religious beliefs. Goff retained her ability to exercise his religious rights and beliefs through prayer by sufficient alternative avenues and testified that he did in fact do so.

Accordingly, defendants are entitled to summary judgment in their favor as a matter of law on plaintiff's religious rights claims.

## **RECOMMENDATION**

For all of the foregoing reasons, IT IS RECOMMENDED that the motion for summary judgment filed by defendants Mike Todd and Robert Tanner be GRANTED and that plaintiff's complaint against these defendants be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[1]

New Orleans, Louisiana, this __13th__ day of July, 2018.

                              _____
                              JOSEPH C. WILKINSON, JR.
                              UNITED STATES MAGISTRATE JUDGE

---

[1] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.